## ULTRA-VIOLET PRODUCTS, Inc., v. FEDERAL TRADE COMMISSION.

No. 10218.

Circuit Court of Appeals, Ninth Circuit.

June 30, 1944.

Dissenting Opinion July 19, 1944.

MATHEWS, Circuit Judge, dissenting in part.

———◆———

Henry McClernan, of Glendale, Cal., for petitioner.

W. T. Kelley, Chief Counsel, Joseph J. Smith, Jr., Asst. Chief Counsel, and Donovan R. Divet, Sp. Atty., all of Washington, D. C., for respondent.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

Petitioner seeks to set aside an order of the Commission prohibiting it from using in its advertising certain statements regarding the effect of its cold quartz lamp, called "Life Lite," emitting certain rays which the advertising claims produce certain beneficial effects when directed against the human body. The jurisdiction is conceded and we may review and to the extent that the order of the Commission is affirmed we may give our own order commanding obedience to the terms of such order of the Commission, Federal Trade Commission Act, § 5(c), 52 Stat. 113, 15 U.S.C.A. § 45(c).

A. The first order complained of is to desist from advertising that Life Lite "affords benefits to the skin or to the general health of the user comparable to those afforded by natural sunlight."

The Commission's experts testified and its brief admits that Life Lite's rays produce in the fat-like sterols beneath the surface of the skin vitamin D which is carried through the body to the bones and aids if not cures rickets. So also do the sun's rays. A little over ten percent of Life Lite's rays are in the lower rays of the sun's spectrum. The remaining rays are below those of the sun. There is no testimony that the quantity of vitamin D produced by Life Lite is more or less than that of the sun's rays. Even in the restricted use of the word "comparable" as "equal" or "nearly as good" or "worthy of comparison" there is no evidence of untruth in the statement that the lamp "affords benefits * * * to the general health of the user comparable to those afforded by natural sunlight."

It is admitted that the lamp's rays are of some benefit to the skin. The Commission's brief admits that Dr. Ayers, its principal expert, testified that the lamp was "useful in the treatment of several skin diseases," but he said that its bactericidal action was limited to "that type of bacteria which is right at the very surface of the skin" because "most of the rays of the light are filtered out by the upper skin layers." Another of the Commission's experts, Dr. Moor, testified that the lamp was "Useful chiefly for very superficial infections and * * * to produce irritation of the skin." Dr. Moor himself states the comparable effect on

the skin of the lamp's rays and those of the sun. In this testimony "stimulating" and "irritating" are terms of the same meaning. The comparison seems favorable to the lamp's rays in the following testimony:

"Q. What is the difference in the effect from the shorter waves found in the cold quartz lamps as compared to the effect of the rays of natural sunlight? A. Well, the shorter rays are much more irritating to the skin. They are factericidal, more bactericidal than sunlight. They do not have the same biological effects as sunlight.

"Q. Now, in what conditions would you say that such rays, such ultra-violet rays, of 2540 angstrom units, such as are found primarily in this respondent's product, would be useful in the treatment of disease or body ailments? A. Useful chiefly for very superficial infections and if it is desirable to produce irritation of the skin, it can be used for that also.

"Q. That is, you would say that it would have a bactericidal and stimulating— A. And stimulating effect on the skin, yes.

"Q. That would be two different classifications of effect; is that correct? A. Yes."

"Q. And what bacteria would be affected by such a lamp? A. Well, practically any organism which is on the surface. There are a few bacteria which flourish in light, but most of the pathogenic organisms are killed by light if they are right on the surface, where they are not protected by any covering of pus or crusts on the surface."

Dr. Moor continues to show that the use of the lamp may be injurious if used on certain skin diseases. The effect of his testimony is that the lamp should be used in many situations only on medical advice.

The question here is not whether the petitioner's past advertising has made improper comparisons of the lamp's rays with the sun's rays, but, assuming that offense, does it deprive the owner of the advertised product of making any comparison with the sun's rays—even though truthful. We think not. It is not the function of the Commission to inflict such a punishment upon the owner of such a product, with its admitted beneficent functions.

The broad terms of the order prevent any statement of even the admitted benefit to the skin or to the general health of the user of the lamp's rays comparable to natural sunlight. We decline to order its enforcement.

■ B. The remaining items of the cease and desist order are more specific. Petitioner claims that there is no substantial evidence to support an order to cease and desist from representing "that said lamp constitutes a cure or remedy or a competent or adequate treatment for * * * ringworm, athlete's foot, acne, eczema, psoriasis * * *." There is testimony by one or another of the physician experts sufficient to sustain the order that the light would be of "very little value" in treating ringworm; "not a proper means of treating athlete's foot;" "very little value in the treatment of acne;" that eczema was "simply a symptom of a disease of the skin," that "without finding out the underlying cause, it is perfectly futile to try to treat it," and while Life Lite might "be of some temporary value in eczema" it would not "effect a cure," and of "no value" in treating psoriasis.

■ C. Similarly there is testimony supporting the order not to advertise "that said lamp constitutes a cure or remedy for sores or ulcers, or that it constitutes a competent treatment therefor except insofar as it may stimulate the healing process in those cases in which the infection causing such condition is confined to the surface of the skin."

Dr. Ayres testified that he knew of no "chronic skin condition which would be improved * * * or benefited" by the lamp except to the extent that the lamp might have a "stimulating effect, such as perhaps in the case of a chronic ulcer, but I doubt very much if the light by itself would be sufficient to bring about a cure in even such a condition." He also testified that it would "Very definitely" be "necessary to have the diagnosis of a physician" before using petitioner's lamp in the treatment of sores and ulcers for the reason that, while the lamp "might be of some value in the treatment of certain chronic ulcers, by way of stimulating cicatrization,[1] * * * one would have to know what the ulcer was caused by.

---

[1] Cicatrization is "A healing process which leaves a scar or cicatrix." Dorland, the American Illustrated Medical Dictionary (18th ed. 1938; Stedman's Medical Dictionary (14th rev. ed. 1939).

You 'could have an ulcer due to syphilis and no amount of light would do it any good. Or you may have an ulcer due to cancer and the use of the light might even aggravate it."

■ D. Similarly with regard to advertising that the lamp "possesses any therapeutic value in the treatment of * * * bronchitis * * *" Dr. Moor testified that bronchitis was "commonly caused by germs in the respiratory tract," that petitioner's lamp did not possess sufficient penetrating power to reach the source of the infection, and had "no direct effect on bronchitis."

■ E. With regard to not advertising "that said lamp builds up in the body resistance to disease," the testimony of the Commission's experts that by irradiating the body's sterols with the lamp's rays its resistance to rickets is increased if the disease is not cured. The Commission's order would prevent the telling of the truth about this valuable property of the lamp's rays and we decline to enforce it.

■ F. With regard to ceasing to advertise "that said lamp afford any stimulation to the tissues of the skin in excess of such stimulation as may result from its irritating effect," there is evidence that the stimulation of the lamp's rays may have a beneficial effect in certain diseases appearing in or through the skin and injurious in others, and that the stimulation is an irritation of the skin. We think this item of the order emphasizing the irritation is warranted and advisable to impress the user with the likely injury from irritating some diseases appearing on the skin.

■ G. Regarding the prohibition against advertising that the lamp "normalizes the chemistry of the body, improves metabolism, or builds new tissues, except insofar as its use *may* result in the production of vitamin D," (emphasis supplied,) we agree that it should be modified as requested by the petitioner to read to prohibit the statement that the lamp "normalizes the chemistry of the body, improves metabolism, or builds new tissues, except insofar as such effects are related to the production of vitamin D resulting from the use of the lamp."

The testimony is that the rays do produce vitamin D in the chemistry of the body. There is no ground for the doubtful word *may* italicized in the order. Petitioner's experts describe the process and the Commission's expert Dr. Moor testified

"Q. In your opinion, would you agree that the only definite benefits known to come from the use of ultra-violet rays would be the maintaining of the phosphorous and calcium of the body and inhibition of rickets? A. Really, that is the only well proven effect of ultra-violet radiation of the body.

"Q. In your opinion, would that be the only proven benefit from such a device,— A. Yes.

"Q. —of the respondent, as described to you in this case? A. Yes, sir."

We set aside the order of the Commission with respect to items described in sections A and E of this opinion without prejudice to the Commission's right to treat the proceeding as one submitted upon these items and subject to such order as the Commission may be advised to make. Cf. International Shoe Co. v. Commission, 280 U.S. 291, 297, 50 S.Ct. 89, 74 L.Ed. 431. We decree the enforcement of the Commission's order with respect to items in sections B, C, D, F, and item G as modified.

Petition granted in part and denied in part.

MATHEWS, Circuit Judge (dissenting in part).

Here for review is an order[1] of the Federal Trade Commission that petitioner, Ultra-Violet Products, Inc., in connection with the offering for sale, sale or distribution of petitioner's therapeutic lamp known as Life Lite, or any other lamp of substantially similar construction, whether sold under the name or any other name, do forthwith cease and desist from directly or indirectly:

"1. Disseminating or causing to be disseminated any advertisement by means of the United States mails or by any means in commerce, as 'commerce' is defined in the

---

[1] My associates (Judges Denman and Stephens) speak of "The first order complained of," thus implying that two or more orders are under review. Actually, there is only one order.

Federal Trade Commission Act,[2] which represents, directly or by implication,

"(a) that said lamp is a sun lamp, or that it affords benefits to the skin or to the general health of the user comparable to those afforded by natural sunlight;

"(b) that said lamp constitutes a cure or remedy or a competent or adequate treatment for barber's itch, ringworm, athlete's foot, acne, eczema, psoriasis, shingles, or erysipelas;

"(c) that said lamp constitutes a cure or remedy for sores or ulcers, or that it constitutes a competent treatment therefor except insofar as it may stimulate the healing process in those cases in which the infection causing such conditions is confined to the surface of the skin;

"(d) that said lamp possesses any therapeutic value in the treatment of asthma, hay fever, bronchitis, colds, sinus trouble, or discharge from the ears;

"(e) that said lamp possesses any therapeutic value in the treatment of anemia;

"(f) that said lamp builds up in the body resistance to disease;

"(g) that said lamp has any tonic effect upon the blood, that it produces any chemical reaction with respect to the blood stream, or that it is of any assistance in overcoming a deficiency of white or red corpuscles;

"(h) that said lamp builds up the resistance of the body to infection, or that it stimulates the endocrine glands;

"(i) that said lamp affords any stimulation to the tissues of the skin in excess of such stimulation as may result from its irritating effect;

"(j) that said lamp quiets or soothes the nerves or the nerve endings in the skin;

"(k) that said lamp acts as an antacid or has any alkalizing effect upon the body;

"(l) that said lamp improves the general tone of the body, makes the body strong, increases vitality, or improves mental reaction;

"(m) that said lamp tones up the nervous system, induces sleep, or relieves pain;

"(n) that said lamp normalizes chemistry of the body, improves metabolism, or builds new tissues, except insofar as its use may result in the production of Vitamin D.

"2. Disseminating or causing to be disseminated any advertisement by means of the United States mails or by any means in commerce, as 'commerce' is defined in the Federal Trade Commission Act, which fails to reveal that excessive exposure to said lamp either with respect to proximity or length of time may result in injury to the user; that said lamp should not be used in the case of pellagra, lupus erythematosus, or certain types of eczema; and that said lamp should never be used unless goggles are worn to protect the eyes; provided, however, that such advertisement need contain only the statement, 'Caution: Use Only As Directed,' if and when the directions for use, wherever they appear on the label, in the labeling, or both on the label and in the labeling, contain a warning to the above effect.

"3. Disseminating or causing to be disseminated any advertisement by any means for the purpose of inducing, or which is likely to induce, directly or indirectly, the purchase in commerce, as 'commerce' is defined in the Federal Trade Commission Act, of said lamp, which contains any representation prohibited in paragraph 1 hereof, or which fails to comply with the affirmative requirements set forth in paragraph 2 hereof."

The order was issued in a proceeding by the Commission against petitioner under § 5(b) of the Federal Trade Commission Act, 15 U.S.C.A. § 45(b), and was based on findings to the effect that petitioner was engaged in the business of selling and distributing its lamp in commerce;[3] that, in the course and conduct of its business, petitioner disseminated advertisements, by United States mails and by other means, in commerce and otherwise, for the purpose of inducing, and which were likely to induce, the purchase of its lamp, in commerce and otherwise; that the advertisements made the representations mentioned in paragraphs 1(a) to 1(n) of the order;[4] that the representations were misleading; that the advertisements failed to reveal

---

[2] Section 4 of the Act, 15 U.S.C.A. § 44, defines "commerce" as "commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation."

[3] See footnote 2.

[4] My associates speak of "items A and E," "items B, C, D, F" and "item G" of the order. There are no such "items."

the facts mentioned in paragraph 2 of the order; and that, in the light of the representations, these facts were material.

The findings are supported by evidence and hence are conclusive.[5] Upon the facts found, the Commission properly concluded that the advertisements disseminated by petitioner were false advertisements,[6] and that petitioner's dissemination thereof constituted an unfair or deceptive act or practice in commerce;[7] and it properly ordered petitioner to cease and desist therefrom.[8]

Paragraphs 1(a) and 1(f) of the order do not (as my associates seem to think) prevent petitioner from telling the truth about its lamp. They merely prevent it from disseminating advertisements containing representations which the Commission, upon ample evidence, has found to be misleading.

The order should be affirmed in toto and should be enforced.

---

[5] Federal Trade Commission Act, § 5 (c), 15 U.S.C.A. § 45(c).

[6] Federal Trade Commission Act, § 15 (a), 15 U.S.C.A. § 55(a).

[7] Federal Trade Commission Act, § 12, 15 U.S.C.A. § 52.

[8] Federal Trade Commission Act, § 5 (b), 15 U.S.C.A. § 45(b).